DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:12CV194-RLV
(5:08CR27-RLV-DCK-4)

| | |
|---|---|
| OSCAR HERNANDEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion for Extension of Time, (Doc. No. 6), and on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 8).

**I. BACKGROUND**

**A. Offense Conduct**

Beginning in April 2008, the Bureau of Immigration and Customs Enforcement ("ICE"), in conjunction with various state and local agencies, conducted a drug-smuggling investigation involving Hector Moises Castellanos and others. (Criminal Case No. 5:08-cr-27-RLV-4: Doc. No. 188 at ¶ 4: PSR). Members of this drug-smuggling operation imported multiple kilogram shipments of cocaine from Mexico, via the Texas border, with the final destination being Hickory, North Carolina. (Id.). The investigation utilized cooperating witnesses, searches and seizures, controlled drug transactions, and audio-recordings of suspects discussing their illegal

1

activities. (Id.). On April 16, 2008, a cooperating witness ("CW") working with the police department in Hickory, North Carolina, purchased a quantity of cocaine from Petitioner Oscar Leal Hernandez at a residence on Startown Road in Hickory, North Carolina. (Id. at ¶ 6). A few weeks later, after conducting a controlled drug transaction between the CW and Castellanos, investigators conducted a non-custodial interview with Castellanos, at which time he provided a statement identifying Hugo Garcia-Cortez (hereinafter Garcia) as the source of his cocaine. (Id. at ¶ 9).

After further investigation of Garcia, agents obtained a search warrant for his residence. (Id. at ¶¶ 10-12). The search of the residence and nearby vehicle resulted in the seizure of ten kilograms of cocaine, $1,694 in U.S. currency, two handguns, and a .22 caliber rifle. (Id. at ¶ 12). Garcia waived his rights, cooperated with agents, and stated that five of the seized ten kilograms of cocaine was scheduled for delivery to one of his customers, Petitioner Oscar Hernandez. (Id. at ¶ 13). Under the direction of agents, Garcia made recorded calls to Petitioner to arrange the delivery of the five kilograms of cocaine. Garcia then traveled with agents to make the delivery at Petitioner's residence in Hickory, North Carolina. Petitioner was secured by officers as he approached the undercover vehicle. During a frisk of Petitioner, officers found $9,920 in one of his pants pockets and $20,000 in another pants pocket. Petitioner cooperated and gave consent for the search of his residence. During the search of Petitioner's residence, officers found an additional $68,620 hidden in a bed in the back bedroom of the residence and a .380 caliber handgun under the mattress of the same bed. (Id.). In total, the investigation revealed that Petitioner was responsible for at least ten kilograms of cocaine throughout the conspiracy. (Id. at ¶ 15).

2

### B. Indictment

On March 17, 2009, the Grand Jury for the Western District of North Carolina returned a second superseding indictment, charging Petitioner and three other individuals with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One). (Id., Doc. No. 122: Second Superseding Bill of Indictment). The three co-defendants were also charged with possession with the intent to distribute five kilograms or more of cocaine and aiding and abetting one another, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and 18 U.S.C. § 2 (Count Two). Petitioner alone was charged with attempting to possess with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count Three), and two weapons offenses, to wit: using or carrying a firearm during a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four), and possessing a firearm by an alien illegally and unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5) (Count Five). Petitioner alone was also charged with distribution of cocaine on a separate occasion; however, that count was dismissed at the conclusion of the Government's case. (Id., Doc. No. 257 at 41-42: Trial Transcript).

### C. Trial

A jury trial for Petitioner and co-defendant Jaime Puente-Vazquez commenced on May 11, 2009. (Id., Doc. Nos. 255-58: Trial Transcript). During the trial, the Government presented the testimony of numerous witnesses who testified to Petitioner's participation in the drug-trafficking conspiracy. At the close of the Government's evidence, Petitioner moved for a judgment of acquittal on all counts pursuant to Rule 29, and the Court heard arguments from the

3

parties. (Id., Doc. No. 257 at 35-40). The Court granted the motion as to Count Six of the indictment against Petitioner charging him with distributing cocaine on April 16, 2008, but denied the motion as to all the other counts. (Id. at 41). Puente-Vazquez also moved for a judgment of acquittal. The Court denied the motion, describing the evidence on the conspiracy count as "overwhelming" and characterizing Puente-Vazquez's counsel's arguments as to the possession with intent to distribute count as "jury arguments." (Id. at 42-43).

Both Defendants then testified at the trial. Petitioner testified that he had a business buying salvage cars, repairing them, and reselling them. (Id. at 51). He had been living at 1850 Startown Road, along with his wife and a daughter, for about eight or nine months before his arrest there. (Id. at 52). Petitioner also said that he rented the back bedroom, where the pistol and cash were recovered, to a man named Juan Ramirez, whom he had met through friends and who had lived there for about two months. (Id.). Petitioner said that he did not go in and out of that room, out of respect for Ramirez's privacy. (Id. at 54). Petitioner claimed that he had only met Garcia a week before his arrest, when he spoke with him at a body shop. (Id. at 54-55). He said that Garcia approached him with a deal: Garcia knew of a salvage place where he could get Petitioner cars more cheaply. (Id. at 55). Petitioner said they exchanged telephone numbers and spoke one or two times after that, but that he never bought cars from Garcia. (Id. at 56). On May 15, 2008, Garcia called him to tell him that a place in Hickory was selling cars and that he had a list of the cars that would be available, which he would give to Petitioner. (Id.). Petitioner said he next spoke with Garcia around midnight, when Garcia called to say he had "this thing," which Petitioner said he presumed to be the list of cars. (Id. at 57). Petitioner said he told Garcia that he was asleep and "maybe some other day," but Garcia insisted until Petitioner

4

finally agreed. (Id.).

Petitioner denied he ever called Garcia that day, or that Garcia had ever been to his house, and he claimed that the term "la manita" used in the recorded conversation meant that Garcia was asking Hernandez to give him a hand, to help him buy some cars. (Id. at 58-59). He said that on the night of his arrest he was in a carport, on the opposite side of the house from the entrance to the rear bedroom, when he saw the black pickup truck arrive. (Id. at 59-60). He went to the other side to see what was happening when someone came out of the truck and pointed at him, identifying himself as the police and ordering him not to move. (Id. at 60).

Petitioner denied that he had walked up to the truck or looked in it. (Id. at 63). He said after the first man told him not to move, another agent came up and put handcuffs on him. (Id. at 60). He denied that he ever tried to run, or that he had ever previously seen the pistol recovered from the back room of his residence, or that he knew who owned the gun. (Id. at 60-61). He also denied that the money recovered from the bed in that room was his, that he had ever met Puente Vazquez, and that he had ever done a drug deal with Garcia. (Id. at 62). Petitioner claimed that Ramirez "had just left" before the police got there, saying he was going to Wal-Mart. (Id. at 63). On cross-examination concerning his claim that in the recorded telephone call he had thought Garcia had a list of cars and was asking for help in buying some of them, Petitioner said that he did not know how long the list might be, nor had they spoken of how many cars Garcia might buy, and therefore he had no idea how much of a "hand" Garcia might be requesting. (Id. at 69-70). He did say that he was going to pay Garcia $200 on top of the price of any car he helped him with, and that he was willing to pay Garcia this commission as a middleman for getting him access to these cars. (Id. at 71). As for Juan Ramirez, Hernandez

5

claimed that he had "no idea" where he was. (Id. at 77). He said he did not know if Ramirez was a drug dealer, and that the only times he had gone into the back bedroom had been when Ramirez was there. (Id. at 78-79).

At the conclusion of the case, Petitioner renewed his Rule 29 motion, which the Court again denied. (Id. at 139). Later that day, the jury returned verdicts of guilty on all the counts. (Id., Doc. No. 158: Jury Verdict). In a special verdict, the jury found that Defendant was responsible for "5 kilograms or more" of powder cocaine. (Id.).

**D. PSR**

Prior to sentencing, the probation officer prepared a presentence report. (Id., Doc. No. 188: Final PSR). Pursuant to U.S.S.G. § 3D1.2(c) and (d), Counts One, Three, and Five were grouped for guideline calculation purposes. (Id. at ¶ 21). For Counts One and Three, conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine, respectively, the probation officer calculated a base offense level of 32, based on Petitioner's responsibility for at least 5 kilograms but less than 15 kilograms of cocaine. (Id. at ¶ 22). For Count Five, the violation of 18 U.S.C. § 922(g), U.S.S.G. § 2K2.1 established a base offense level of 14. (Id. at ¶ 28). Pursuant U.S.S.G. § 3D1.3, the highest offense level applicable to the group was 32. (Id. at ¶ 35). No adjustments were added to the base level; therefore, the total offense level for Counts One, Three, and Five became 32. For Count Four, possession of a firearm during and in relation to a drug trafficking crime, U.S.S.G. § 2K2.4 provides that a defendant convicted of a violation of 18 U.S.C. § 924(c) is subject to the statutory minimum term of imprisonment, id. at ¶ 39, a mandatory consecutive sentence of not less than 5 years, id. at ¶ 66. Accordingly, the probation officer recommended an advisory guidelines range of 135 to

168 months, plus a 60-month consecutive sentence based on a total offense level of 32 and a criminal history category of II. (Id. at ¶ 67).

Both the Government and Petitioner lodged objections to the PSR. (Id., Doc. Nos. 179; 181: Objections). The Government asserted that Petitioner should be held liable for approximately 20 kilograms of cocaine, resulting in an offense level of 34. (Id., Doc. No. 179). The probation officer noted that the Government indicated that Petitioner obstructed justice by committing perjury at trial; however, no enhancement was made to Petitioner's offense level with the explanation that this was an issue to be addressed at sentencing. (Id., Doc. No. 188 at ¶ 26). Petitioner objected to the Government's allegation that Petitioner had obstructed justice, asserted that his base offense level should be 32, and objected to his criminal history as category II, maintaining that it should be category I because his probation had expired a month before commencement of the criminal violations. (Id., Doc. No. 181 at 1-2). Additionally, Petitioner requested a variance from the guideline sentence range. (Id. at 2).

**E. Sentencing**

This Court conducted Petitioner's sentencing hearing on March 1, 2010. (Id., Doc. No. 259: Sentencing Transcript). Petitioner's counsel withdrew the objection to the criminal history concerning Petitioner's prior conviction for driving while his license was revoked, but maintained his argument that Petitioner did not obstruct justice for denying his guilt at trial. (Id. at 2-3). The Government maintained its argument for enhancement for obstruction of justice and also submitted that the evidence supported Petitioner's liability for 20 kilograms of cocaine, "or even in the light most favorable to the [Petitioner], 15 kilograms." (Id. at 5). The Court declined to find the obstruction adjustment, but found that "the preponderance of the evidence support[ed]

7

the proposition that more than 15 kilograms was involved." (Id. at 7). Therefore, Petitioner's offense level became level 34. (Id.). In his statements on behalf of Petitioner prior to sentencing, Petitioner's counsel argued that Petitioner's criminal history category of II was overstated because his conviction for driving while license revoked had been remanded subsequent to appeal; otherwise, his probation would have expired before his involvement in the conspiracy violation and his criminal history category would have been I. (Id. at 9). Therefore, counsel requested the Court to consider a variance and sentence Petitioner to "the mandatory minimum of 120 months on the drug cases and 60 months on the 924(c) [conviction] for a total sentence of 180 months." (Id.). The Court sentenced Petitioner to 168 months on Counts One and Three, 120 months on Count Five, to be served concurrently, and 60 months on Count Four, to be served consecutively to Counts One, Three, and Five, for a total of 228 months. (Id. at 10-12). The Court entered judgment on March 9, 2010. (Id., Doc. No. 228: Judgment).

**F. Appeal**

Petitioner appealed his sentence. Specifically, Petitioner challenged the sufficiency of the evidence to support his convictions on the drug conspiracy conviction as well as the substantive drug violations and the firearms charges. On July 22, 2011, the Fourth Circuit affirmed Petitioner's conviction. United States v. Hernandez, 440 Fed. App'x 159, 162 (4th Cir. 2011).

**G. § 2255 Motion**

Petitioner placed the instant motion to vacate in the prison mailing system on November 28, 2012, and it was stamp-filed in this Court on December 3, 2012. In his motion, Petitioner claims that his counsel provided ineffective assistance of counsel at all stages of the criminal

8

proceedings, pre-trial, trial, sentencing, and on appeal. Specifically, Petitioner first alleges that counsel failed to object to the imposition of an erroneous sentence based on the Court's finding Petitioner responsible for 15 kilograms of cocaine and sentencing him at offense level 34 in contradiction of the jury's finding him responsible for "5-kilograms but less than 15-kilograms of cocaine," which should have resulted in offense level 32. (Doc. 1-1 at 3). Petitioner also alleges that the Court's finding him responsible for 15 kilograms of cocaine was made at the "behest" of the Government at sentencing and that his sentence is invalid because "the specific threshold drug quantity of 15-kilos or more of cocaine was not alleged in the indictment." (Id. at 2).

Second, Petitioner asserts that counsel failed to seek reduction of his criminal history category pursuant to the "Recency Amendment" to the United States Sentencing Guidelines which would have removed two points from his criminal history category, reducing his criminal history category to I and likewise reducing his "jail time." (Id. at 5-6). Third, Petitioner claims that counsel failed to have the tape recordings tested for tampering, advising Petitioner that there was no way to prove it, and allegedly precluding Petitioner from raising an entrapment defense. (Id. at 7). Finally, Petitioner alleges that counsel's stipulation with the Government that a gun was found in Petitioner's home and had traveled in interstate commerce was made without Petitioner's consent, prejudiced Petitioner, and constituted a fraud upon the Court. (Id. at 8). Petitioner further maintains that defense counsel worked against Petitioner by joining with the Government in refusing "to turn over certain discovery materials" to aid Petitioner in preparing an adequate § 2255 motion, and failed to notify him of the Supreme Court's denial of certiorari in November 2011. (Id.).

On December 2, 2013, this Court entered an Order for the Government to respond and, after receiving extensions of time, the Government filed its Response on May 19, 2014. Along with the Response, the Government has submitted an affidavit from Petitioner's defense counsel Matthew Joseph, addressing Petitioner's ineffective assistance of counsel claims. See (Doc. No. 8-1: Joseph Aff.).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's Response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant

relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### A. Sentencing

Petitioner first alleges that counsel was ineffective for failing to object and cure the error of the imposition of an erroneous sentence based on the Government's advocacy at sentencing that Petitioner was responsible for 15 kilograms of cocaine, the Court's finding that Petitioner was responsible for 15 kilograms of cocaine, and the Court's sentencing Petitioner at offense level 34 in contradiction of the jury's finding him responsible for "5-kilograms but less than 15-kilograms of cocaine." Petitioner argues that, based on the jury's finding, his offense level should have been 32. Petitioner also argues that his sentence is invalid because "the specific threshold drug quantity of 15-kilos or more of cocaine was not alleged in the indictment." (Doc. No. 1-1 at 2).

Petitioner's first ground for relief is without merit. As explained in Mr. Joseph's affidavit, counsel argued for an offense level of 32 in his objections to the PSR, and the revised PSR set forth offense level 32, but the Court found by a preponderance of the evidence that Petitioner was responsible for in excess of 15 kilograms of cocaine. (Doc. No. 8-1 at ¶¶ 8; 9). Moreover, contrary to Petitioner's contention, the jury in this case did not find that Petitioner

11

was responsible for more than five but less than 15 kilograms of cocaine. Rather, the jury found that Petitioner was responsible for <u>at least</u> five kilograms of cocaine. Thus, the premise of Petitioner's argument is faulty.

Second, Petitioner's argument fails because "[s]entencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict." <u>United States v. Benkahla</u>, 530 F.3d 300, 312 (4th Cir. 2008). This Court properly found by a preponderance of the evidence that Petitioner was responsible for in excess of 15 kilograms of cocaine, a finding that is supported by the record. The statutory maximum sentence for the violations of 21 U.S.C. § 841(b)(1)(A) charged in Counts One and Three is life imprisonment. Therefore, neither the increase from offense level 32 to 34 nor Petitioner's responsibility for in excess of 15 kilograms of cocaine increased the statutory maximum sentence. Moreover, in each of Counts One and Three, the second superseding indictment charges that the offense involved "at least five (5) kilograms of a mixture and substance containing a detectable amount of cocaine." (Criminal Case No. 5:08-cr-27-RLV-4, Doc. 122 at 1-2: Second Superseding Bill of Indictment). Although Mr. Joseph argued in favor of this Court's finding a lower drug quantity, Petitioner was properly held responsible, therefore, for 15 kilograms of cocaine, and he has not produced evidence of either deficient representation or prejudice.

**B. Recency Amendment**

Petitioner next contends that counsel failed to raise on appeal the application of the so-called "recency amendment" to the U.S. Sentencing Guidelines. Before the so-called recency

amendment, a sentencing court was required to add two points to a defendant's criminal history calculation if the defendant committed his offense less than two years after release from imprisonment. See U.S.S.G. § 4A1.1(e). The recency amendment eliminated these "recency points" and became effective November 1, 2010. See U.S.S.G. App. C, amend. 742. Petitioner contends that he should have received a two-point reduction in his criminal history category reducing him from category II to category I and likewise reducing his "jail time."

Contrary to Petitioner's claim, the recency amendment provides him no relief. First, Petitioner was not actually given any "recency" points under U.S.S.G. § 4A1.1(e). Rather, two points were added to his criminal history computation pursuant to U.S.S.G. § 4A1.1(d), because he was on probation for driving while his license was revoked. Second, Petitioner was sentenced on March 1, 2010, approximately eight months before the Sentencing Commission eliminated the "recency" provisions of U.S.S.G. § 4A1.1(e). This amendment was not made retroactive, and this Court properly used the 2009 version of the Sentencing Guidelines, which was in effect on the date Petitioner was sentenced. See (Doc. No. 8-1 at ¶¶ 10-11). Again, having shown neither deficient representation nor prejudice, Petitioner's claim of ineffective assistance of counsel on this issue fails.

**C. Tape Recording**

Petitioner next contends that counsel provided ineffective assistance by failing to have the tape-recorded conversation tested for tampering and breaks. Petitioner claims that there were "pieces" of the conversation missing between him and Garcia. He also claims that his attorney told him there was no way to prove tampering and such failure prevented the Court from conducting an evidentiary hearing "which may have supported an entrapment defense for the

13

petitioner." (Doc. No. 1-1 at 7).

Petitioner's claim fails. Mr. Joseph states in his affidavit that he does not recall Petitioner expressing his belief that the recorded conversation had been altered in any way. (Doc. No. 8-1 at ¶¶ 13; 14). Mr. Joseph explains that Petitioner did express to him that there were other phone calls between him and Hugo Garcia but these calls occurred earlier in the day before Garcia's arrest and, based on the evidence, Garcia's phone calls were not recorded until after his arrest and with his consent. Mr. Joseph states that he, therefore, was neither aware of nor had reason to believe that the Government possessed tape recordings of conversations between Petitioner and Hugo Garcia that were not turned over as part of the Government's discovery. (Id.). Mr. Joseph also points out that, other than concerns about the English translation of some of the Spanish words used during the conversation between Petitioner and Mr. Garcia, he does not recall Petitioner expressing a belief that the recorded conversation was in any way altered. (Id. at ¶ 15). Finally, Agent Elmore testified at trial that he had listened to the audio recording of the telephone call several times, initialed and dated it, and that the recording was the conversation he heard on that date. (Id., Doc. No. 255 at 69: Trial Tr.). As for an entrapment defense, Mr. Joseph states that Petitioner never discussed with him the possibility of an entrapment defense, a defense that would have been inconsistent with Petitioner's continued proclamation of innocence and denial of the charges before and during his trial testimony. (Doc. No. 8-1 at ¶ 16). Petitioner has not shown that counsel was ineffective for failing to argue an entrapment defense.

In sum, there is no merit to Petitioner's claim of ineffective assistance of counsel based on Petitioner's claim that the tape recording was altered or that counsel should have pursued an entrapment defense. Again, having shown neither deficient representation nor prejudice,

Petitioner's claim fails.

### D. Stipulations

As his final claim, Petitioner contends that counsel entered into stipulations with the Government concerning the firearm in his home without his knowledge or consent and that these stipulations prejudiced him at trial by admitting to the jury that he did have a gun in his home, that he knew about it, and that the gun had in fact traveled in interstate commerce. Petitioner also claims that the stipulations constituted fraud on the Court. Finally, Petitioner contends that all during the case "petitioner's counsel . . . worked against the interest of petitioner." (Doc. No. 1-1 at 8).

Petitioner's claim fails. First, Mr. Joseph asserts in his affidavit that he discussed every proposed stipulation with Petitioner before agreeing to the stipulation and that he did not stipulate that Petitioner was aware of the presence of the firearm. (Doc. No. 8-1 at ¶ 19). The trial transcript and evidence in the record clearly substantiates this assertion by Mr. Joseph. Here, the stipulation concerning the .380 Davis Industries handgun was that the handgun met the definition of a "firearm" under 18 U.S.C. § 921(a)(3), that Petitioner was an illegal alien, and that the handgun was manufactured outside the State of North Carolina.[1] The stipulation

---

[1] The trial transcript shows that the stipulation read to the jury provided as follows:

> The United States and defendant Oscar Hernandez, represented by Matthew Joseph, Esquire, advise that they have entered into the following stipulations: One, that defendant Oscar Hernandez was an alien illegally and unlawfully in the United States on May 16th, 2008, and as a result was prohibited at that time from possessing any firearm in and affecting interstate commerce. That the .380 Davis Industries handgun recovered on May 16th, 2008, from 1850 Startown Road, Hickory, North Carolina, was a firearm" as defined under 18 U.S. Code Section 921(a)(3), and was manufactured outside of the State of North Carolina; therefore, it traveled in interstate and foreign commerce. <u>And then, finally, the defendant</u>

15

explicitly stated that Petitioner denied the remaining element of possession. (Id. at ¶ 20). In fact, Mr. Joseph argued to the jury in closing arguments that Petitioner was not aware of the gun in his house and therefore could not have constructively possessed it. (Doc. No. 8-1 at ¶ 18; Doc. No. 257 at 188 ("The question is about possession. About whether he constructively possessed [the firearm]. Whether he knew, was aware of that gun being in that room. There is no evidence that he was ever aware of the gun."). In sum, Petitioner's ineffective assistance of counsel claim based on stipulations regarding the firearm is without merit.

Finally, Petitioner's claim that counsel "worked against" Petitioner throughout the criminal proceedings fails, as the record establishes that Petitioner's counsel provided to Petitioner all documents deemed releasable to Petitioner. Discovery documents not provided to Petitioner constituted discovery material not releasable pursuant to the Government's standard discovery agreement. See (Criminal Case No. 502-cr-27-RLV-4, Doc. No. 283: Joint Motion in Opposition). While Petitioner contends that counsel failed to inform him of the Supreme Court's denial of certiorari in November 2011, Petitioner knew about the denial of certiorari well in advance of the November 28, 2012, deadline for filing his motion to vacate, as evidenced by his requests for the release of counsel's files, filed in February, March, and April 2012, and his admission in his current motion that he requested information from counsel to prepare a § 2255 motion. (Id., Doc. Nos. 282; 284; 286). He also filed his motion to vacate within the one-year deadline from the denial of certiorari. Once again, having shown neither deficient representation nor prejudice, Petitioner's claim on this final issue fails.

---

<u>specifically denies the remaining elements of the gun offense for which he is charged</u>.

(Doc. No. 255 at 79-80) (emphasis added).

16

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. The Government's Motion for Extension of Time, (Doc. No. 6), is **GRANTED** nunc pro tunc.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: June 18, 2014

Richard L. Voorhees
United States District Judge